UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TARA LINDSAY,

    Plaintiff,

-vs-

Case No. 07-11889
Judge Avern Cohn

CLAWSON POLICE DEPARTMENT
and OFFICER GERALD BIGELOW,
jointly and severally,

    Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**I. Introduction**

This is a civil rights case brought under 42 U.S.C. § 1983. On July 1, 2006, Plaintiff Tara Lindsay ("Lindsay") was in her apartment in Clawson, Michigan, when Clawson police came to her door. The police received a report that the water in Lindsay's apartment had been running for a period of hours and came to conduct a "welfare check." While Lindsay was unlocking the door, an officer kicked it in, causing the door to strike Lindsay in the face. In her complaint, Lindsay makes several claims arising out of this incident against the defendant, Clawson Police Officer Gerald Bigelow ("Bigelow"): (1) violation of 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments), (2) violation of 42 U.S.C. § 1985, (3) assault and battery, (4) gross negligence, and (5)

violation of the Michigan Constitution.[1]  Before the court is Bigelow's motion for summary judgment.  For the reasons discussed below, the motion will be granted.

## II.  Facts

The following are the facts as gleaned from the record.  None are in serious dispute.

On the morning of July 1, 2006, Patricia Smith ("Smith") was in her apartment at 220 South Rochester Road in Clawson, Michigan.  Smith became concerned that the water in the apartment above her own had been running for a period of hours.  The sound of the water appeared to be coming from the bathroom; Smith feared that Lindsay, the resident of the apartment upstairs, might have slipped and injured herself in the shower.  Lindsay's car was parked outside, so Smith believed she was likely in the apartment.  Smith knocked on Lindsay's door and rang the doorbell, but got no response.  Smith then called the Clawson police.  She says she cannot remember which number she called; Bigelow says that Smith called him on his personal cell phone rather than calling the Clawson police department.  Bigelow and Smith are social acquaintances.

Bigelow notified police dispatch of the call from Smith and proceeded to the scene.  He was met there by another Clawson police car carrying Officers William Haynes ("Haynes") and Darrell Adams ("Adams").  The officers discussed the situation

---

[1] The complaint also makes claims against the Clawson Police Department.  At oral argument, Lindsay agreed to withdraw these claims.  In any case, the Clawson Police Department not an entity amenable to suit.  See Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994).
  Lindsay also sought leave at oral argument to add another police officer as a defendant.  Given the disposition of the case this would be futile, and leave is denied.

2

with Smith. Bigelow says that the officers entered Smith's apartment to listen to the sound of the running water; Smith does not remember this. The officers then proceeded upstairs to the exterior door of Lindsay's apartment. The officers knocked on the door, announced themselves as Clawson police, and rang the door bell. There was no response.

The building manager at the apartment complex was out of town, so Smith gave the officers the phone number for the emergency maintenance worker, Fidel Godoy ("Godoy"). Bigelow called Godoy, who reported that he was working on a job in Detroit and that it would take perhaps half an hour for him to travel to Clawson and unlock Lindsay's apartment. While the officers waited for Godoy to arrive, Haynes drove to the home of Timothy LaFave ("LaFave"), another maintenance worker at the apartment complex who lived nearby, to see if LaFave had a key to Lindsay's apartment. LaFave was not at home, and Haynes returned to the apartment complex. Approximately half an hour after Bigelow initially called Godoy, he called again to determine when Godoy would arrive. Godoy again said it would take him half an hour to get to the apartment complex. At this point, the officers judged that Godoy was not taking the calls seriously and might not ever arrive and allow them entry into Lindsay's apartment. Accordingly, the officers resolved to kick in the door to gain entry to the apartment.

The officers once more knocked and announced their presence at the exterior door of Lindsay's apartment. When they again heard nothing in response, Haynes kicked the door in. Haynes says that he held the door handle and directed his kick in such a way as to minimize damage to the door frame. Lindsay was standing directly

3

behind the door as Haynes delivered his kick.  As a result of the kick, the door came open and struck Lindsay in the face, knocking her backward.

Lindsay says that she was in her apartment throughout the morning of July 1.  She says that her fan and air conditioner were both running, so that it may have been difficult for her to hear someone knocking at the door.  At some point while she was still in bed, Lindsay heard "faint" sounds of someone knocking on a door and then heard the doorbell ring.  Lindsay got out of bed to answer the door, but she did not see anyone through the peephole and assumed the knocking had been on the door of a neighboring apartment.

Perhaps half an hour later, Lindsay again heard knocks on the door and the doorbell.  Through the peephole, she saw three police officers standing outside the door.  Lindsay says she "shouted 'hold on'" while she began to unlock the door.  Before she could remove the chain lock and open the door, the door struck Lindsay in the face.

The officers "repeatedly" offered to call an ambulance, but Lindsay refused medical treatment.  She explained to the officers that her toilet had been running.  She says that one officer entered her apartment and briefly looked around; Haynes and Bigelow deny that this occurred.  Later that day, after observing bruising to her face and experiencing nausea, Lindsay went to the emergency room at Beaumont Hospital.  Doctors at the emergency room gave her a CAT scan and recommended a follow-up visit with a physician.  Lindsay never scheduled a subsequent appointment.  She says that as a result of being struck with the door, the area around one of her eyes was bruised.  She has also experienced headaches, but she has not talked to a medical professional about this problem.

### III. Legal Standard

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light

most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

## IV. Discussion

Lindsay asserts five claims: (1) violation of 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments), (2) violation of 42 U.S.C. § 1985, (3) assault and battery, (4) gross negligence, and (5) violation of the Michigan Constitution. The record shows that there is no genuine dispute as to any of the facts material to deciding these claims and that Bigelow is entitled to judgment as a matter of law on all five.

### A. 42 U.S.C. § 1983

#### 1. Warrantless Search

The gravamen of Lindsay's § 1983 claim is that the police violated the Fourth Amendment by forcibly entering her apartment without a warrant. Warrantless entries into a home are "presumptively unreasonable" under the Fourth Amendment. Payton v. New York, 445 U.S. 573, 586 (1980). However, courts have recognized a number of exceptional circumstances in which it may be permissible for law enforcement officials to enter a home without a warrant. The state bears the burden of proving that a particular search fits within an exception to the warrant requirement. See id. One such exception involves circumstances presenting a risk of danger to the police or others.

6

United States v. Johnson, 22 F.3d 674, 680 (6th Cir. 1994). The "risk of danger" exception is most often invoked "in cases where the government is acting in other than a traditional law enforcement capacity." United States v. Rohrig, 98 F.3d 1506, 1516 (6th Cir. 1996). For example, police officers would be justified in entering a burning building without a warrant to protect any persons who may be inside. Michigan v. Tyler, 436 U.S. 499, 509 (1978).

Likewise, "police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." Root v. Gauper, 438 F.2d 361, 364 (8th Cir. 1971). An officer's belief that a person is in distress and in need of assistance is reasonable if the circumstances, viewed objectively, justify his actions; the subjective motivations of the officer are irrelevant to the Fourth Amendment analysis. Brigham City v. Stuart, 547 U.S. 398, 404 (2006). The Sixth Circuit has suggested that three factors are of particular relevance in assessing an exigent circumstances exception to the warrant requirement: "(1) whether immediate government action was required, (2) whether the governmental interest was sufficiently compelling to justify a warrantless intrusion, and (3) whether the citizen's expectation of privacy was diminished in some way." Rohrig, 98 F.3d at 1521.

In this case, the circumstances known to the officers provided several objective indications that there may have been an injured person inside Lindsay's apartment. A neighbor had heard Lindsay's water running for several hours and reported to the police that she feared Lindsay may have fallen and injured herself in the shower or otherwise

become incapacitated. Lindsay's car was parked outside, suggesting that she was present in the apartment. However, no one answered the door despite repeated knocks on the door and use of the doorbell. In sum, the circumstances were entirely consistent with the idea that there may have been a person in need of medical assistance in Lindsay's apartment. "It must be emphasized that the fact that, as it turned out, no one was injured is of no moment...In evaluating the police conduct, the Court must focus on the totality of the circumstances that the police faced prior to the decision to enter the residence without a warrant. The Court may not properly rely on what was subsequently discovered or not discovered." State v. Hedley, 593 A.2d 576, 582 (Del. Super. Ct. 1990).

Although they were uncertain of what was going on inside Lindsay's apartment, the Clawson police officers faced a situation in which serious injury or even death were potentially at stake and in which it was important to act promptly. The indicia of exigency are at least as substantial as in other cases in which courts approved warrantless entry of private residences. In Rohrig, for example, the Sixth Circuit held that police acted reasonably in entering a house without a warrant after neighbors had complained of loud and disruptive music playing at a late hour. As in this case, the officers in Rohrig received no response after knocking and announcing their presence and did not attempt to contact the resident by phone. The court noted that "important governmental interests may be at stake even in the absence of life-or-death circumstances," 98 F.3d at 1522, and held that the governmental interest in "restor[ing] the neighbors' peaceful enjoyment of their homes and neighborhood" justified entering the home without a warrant, id. at 1521. Other decisions have approved of police

8

entering private apartments without a warrant after receiving reports that water was leaking into apartments below. See United States v. Boyd, 407 F. Supp. 683, 694 (S.D.N.Y. 1976); State v. Dube, 655 A.2d 338, 339 (Me. 1995).

Lindsay suggests that the officers should have attempted to reach her by phone or taken some other measures to contact her before entering her apartment. However, it is pure speculation to say that a phone call would have resolved the situation; in light of the fact that Lindsay failed to respond to repeated knocking and ringing of her doorbell, it seems doubtful that she would have responded to the telephone. More to the point, the Fourth Amendment does not dictate "that a warrantless entry is permissible only when all conceivable alternatives have been exhausted. Such a rule would ignore the day-to-day and minute-to-minute demands upon police officers, and instead to evaluate their conduct under a standard established with the benefit of hindsight." Rohrig, 98 F.3d at 1524.

Finally, Lindsay argues that after the officers had kicked the door in and determined that there was no medical emergency, the "exigent circumstances" exception ceased to apply and the officers violated the Fourth Amendment by entering Lindsay's apartment. This argument fails since Lindsay testified at her deposition that she consented to let the officers come in and look around. Because she freely consented to the search, there is no need to resort to the exigent circumstances exception.

In sum, based on the circumstances known to them at the time, the Clawson police officers could reasonably have believed that there was an injured person in need

of assistance inside Lindsay's apartment. Their attempt to enter the apartment was also reasonable and therefore comported with the Fourth Amendment.

## 2. Excessive Force

Lindsay also asserts a claim of excessive force under the rubric of § 1983. Excessive force claims are also evaluated under the "objective reasonableness" standard of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 396 (1989). Lindsay's claim fails because the record unambiguously indicates that any injury to Lindsay was an accident and that the officers never intended to use force against her.

The facts of this case are similar to those in Thomas v. Ivezaj, 129 F.3d 1265 (table), 1997 WL 720448 (6th Cir. Nov. 12, 1997). In Thomas, the police forced open a door to a gambling establishment, unintentionally striking a man who was standing behind the door. In affirming the district court's grant of summary judgment to the defendant police officer, the Sixth Circuit stated:

> [W]e find that, as a matter of law, pushing the door open does not constitute excessive force. Plaintiff has cited no case law in which forcing open a door has been considered an excessive use of force. Plaintiff concedes that it was a metal door with no windows, and that it would be impossible for the police to know if anyone was standing on the other side of it. Although plaintiff may have had the misfortune to be standing by the door, this does not constitute excessive force. There is nothing in the record to indicate that plaintiff's alleged injury was anything other than an accident.

Id. at *3. The situation in this case is essentially similar: the officers' testimony that they were unaware that anyone was standing behind the door and that they did not intend to strike Lindsay is undisputed. Bigelow is therefore entitled to summary judgment on Lindsay's claim of excessive force.

10

### B. 42 U.S.C. § 1985

In her response to Bigelow's motion, Lindsay concedes that she cannot sustain a claim under § 1985. See Wcisel v. City of Utica, 2005 WL 3478355, at *5 (E.D. Mich. Dec. 20, 2005); Turner v. Viviano, 2005 WL 1678895, at *13 (E.D. Mich. July 15, 2005).

### C. Assault and Battery

Under Michigan law, to recover for the tort of assault, "plaintiff must show an intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which crate a well-founded apprehension of an imminent contact, coupled with apparent present ability to accomplish the contact." Vanvorous v. Burmeister, 687 N.W.2d 132, 142 (Mich. App. 2004) (citations and internal quotation marks omitted). To recover for battery, a plaintiff must show a "willful and harmful or offensive touching of another which results from an act intended to cause such a contact." Id. Because the record unambiguously demonstrates that the officers did not intentionally threaten Lindsay with the use of force and did not intentionally use force against her, Bigelow is entitled to summary judgment on this claim.

### D. Gross Negligence

Under Michigan law, governmental officers and employees are shielded from tort liability so long as their conduct does not amount to "gross negligence." MCL § 691.1407(2). "Gross negligence" is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL § 691.1407(7)(a). In this case, the record does not contain any evidence tending to suggest that the officers

acted recklessly in causing injury to Lindsay. To the contrary, the evidence indicates that the officers forcibly opened the door to Lindsay's apartment because they were concerned for her safety. There is no suggestion that their causing the door to open and strike Lindsay in the face was anything other than an accident; Lindsay says she called out "hold on" after the officers knocked, but the officers' testimony that they did not hear Lindsay and did not know anyone was standing behind the door is uncontradicted. Accordingly, Bigelow is entitled to summary judgment on Lindsay's gross negligence claim.

### E. Michigan Constitution

As Lindsay concedes in her response brief, the Michigan Constitution does not provide a provide a private right of action for violations thereof. See Jones v. Powell, 612 N.W.2d 423, 426 (Mich. 2000).

### V. Conclusion

For all the reasons discussed above, Bigelow's motion for summary judgment is GRANTED. The case is DISMISSED.

SO ORDERED.


Dated: April 21, 2008
      s/Avern Cohn
      AVERN COHN
      UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 21, 2008, by electronic and/or ordinary mail.

      s/Julie Owens
      Case Manager, (313) 234-5160